IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERICKA JACKSON,<br>*Plaintiff* | : <br> : <br> : | CIVIL ACTION |
| v. | : <br> : | |
| TRANS UNION, LLC,<br>*Defendant* | : <br> : <br> : | No. 21-023 |

## MEMORANDUM

PRATTER, J.                                                                                                                  DECEMBER ⁶, 2021

### INTRODUCTION

This is one of many cases in this District challenging the way that credit reporting agencies report consumer credit accounts under the Fair Credit Reporting Act ("FCRA"). The dispute here, like in other cases, challenges the way that credit reporting agencies report credit accounts that at one time were past due but have since been closed. Ericka Jackson alleges that Trans Union's report is inaccurate and will potentially mislead creditors now and in the future regarding her credit history. The Court, however, disagrees. Therefore, the Court will grant Trans Union's motion for judgment on the pleadings.

### BACKGROUND

Plaintiff Ericka Jackson's case relates to four student loan accounts with Fedloan ("the accounts"). The accounts were consolidated on November 9, 2016, and then closed on that date. Ms. Jackson, through counsel, sent a dispute letter to Trans Union on December 20, 2018, arguing that her credit report inaccurately reported the accounts. Trans Union replied with investigation results on January 5, 2019. The investigation report lists all of Ms. Jackson's accounts and, for the

1

accounts at issue here, states the following: (1) In the "Remarks" field, the accounts are marked as "Closed", (2) in the "Balance" field, the accounts are shown to have a $0 balance, (3) in the "Date Closed" field, the accounts show a "Maximum Delinquency of 120 days" and that this delinquency occurred in "09/2016 and in 11/2016", and (4) in the "Date Closed" field, the accounts are all shown as being closed on "11/09/2016." Doc. No. 12-3, at 5–6. However, in the "Pay Status" field, the accounts are shown as "120 Days Past Due Date." *Id.* This last piece of information forms the crux of the matter in front of the Court.[1]

Based on this investigation report, Ms. Jackson argues that Trans Union did not follow reasonable procedures to ensure the accuracy of the report about her and that it did not conduct a good faith investigation. Ms. Jackson alleges that Trans Union continued to report an erroneous "Pay Status" field on these closed accounts because her credit report stated the account was "120 Days Past Due Date" after the accounts had been consolidated and closed. As a result, Mr. Jackson claims that Trans Union has violated the federal Fair Credit Reporting Act by (1) negligently and willfully failing to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information reported to third parties in violation of 15 U.S.C. § 1681e(b) and (2) failing to conduct a good faith investigation and failing to delete or modify inaccurate information after Ms. Jackson disputed this information in violation of 15 U.S.C. §§ 1681i(a)(1)(A) and 1681i(a)(5). In addition, Ms. Jackson alleges that Trans Union's action and/or inaction was willful, rendering it liable for actual, statutory, and punitive damages on both counts.

Trans Union answered Ms. Jackson's complaint and then filed its motion for judgment on the pleadings. As its headline argument, Trans Union argues that Ms. Jackson's complaint fails at

---

[1] Rather than the "crux" of the matter, given the frequent appearance of this issue in the same manner and in so many cases, it may be more aptly characterized as "the raspberry seed in [the Court's] wisdom tooth." Meredith Wilson, The Music Man, 1957.

2

the threshold because it has not reported any inaccurate or materially misleading information. In short, Trans Union concedes that the report contains a notation that the accounts were past due at some point but it argues that because the accounts are now marked as "Closed" in addition to the other information, the account information, taken as a whole, is not inaccurate.

Ms. Jackson responded to Trans Union's motion by filing a response and a partial cross-motion for judgment on the pleadings on the issue of accuracy, and a motion for leave to amend in the alternative. At the oral argument held on these preliminary issues, Ms. Jackson withdrew the partial cross-motion for judgment on the pleadings. As a result, the Court considers Ms. Jackson's briefing as a response and a motion for leave to amend. Trans Union subsequently filed its reply. As such, the matter is ripe for the Court's decision.

For the reasons that follow, the Court grants Trans Union's motion for judgment on the pleadings.

## LEGAL STANDARD

Under Fed. R. Civ. P. 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." A court may grant such a motion if the movant "is entitled to judgment as a matter of law" based on the pleadings. *Fed Cetera, LLC v. Nat'l Credit Servs., Inc.*, 938 F.3d 466, 469 n.7 (3d Cir. 2019) (internal quotation omitted). In other words, a motion for judgment on the pleadings can be granted only if the non-movant cannot prevail under any set of facts. *Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 214, 220 (3d Cir. 2001). A court analyzes both a motion to dismiss and a motion for judgment on the pleadings under the same legal standard. *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019).

3

In analyzing a motion for judgment on the pleadings, a court takes the complaint's well-pleaded facts as true and construes all allegations and inferences in the light most favorable to the nonmoving party. *Id.* Beyond the complaint, a court can consider documents attached to the complaint or those "integral to or explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (emphases and internal quotation omitted).

Here, both Ms. Jackson and Trans Union attached Trans Union's credit investigation report to their motions. Because the investigation report and the information contained in it are "integral to" and "explicitly relied upon in the complaint," the Court will consider and refer to the investigation report in resolving the present motion.[2]

## DISCUSSION

To state a viable claim under the FCRA, Ms. Jackson must establish that the information in her credit report was inaccurate. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 708, 712–13 (3d Cir. 2010); *see also Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 904 n.9 (3d Cir. 2011) (per curiam) (same). The Court does not need to reach or consider the reasonableness of a credit reporting agency's procedures under 15 U.S.C. § 1681e or the reasonableness of a credit reporting agency's reinvestigation under § 1681i unless the information contained in the report is inaccurate. *See Angino v. Trans Union, LLC*, 784 F. App'x 67, 69 (3d Cir. 2019) ("[W]e can assume that absent any indication that the information is inaccurate, [§ 1681i] does not mandate further investigation." (internal quotation omitted)).

---

[2] The "investigation report" is not the same as a "credit report." However, the parties here provided copies of the investigation report and request that the Court use the investigation report to determine the accuracy of the information regarding Ms. Jackson's accounts. The Court will "accept the parties' representation [that] we can determine the accuracy of the report using the investigation results." *Bibbs v. Trans Union LLC*, 521 F. Supp. 3d 569, 574 (E.D. Pa. 2021). Therefore, the Court will refer to the investigation report as Ms. Jackson's credit report throughout, except when briefly distinguishing the information in an investigation report that is not included in a credit report in Section I, *infra*.

4

Information is "inaccurate" within the meaning of the FCRA if it is incorrect or "misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014). "[A] consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression." *Schweitzer*, 441 F. App'x at 902 (quoting *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 148 (4th Cir. 2008)).

Generally, the question of whether information that is "technically correct" is still materially misleading is a question for a jury. *Gibbs v. Trans Union LLC*, No. 21-cv-667, 2021 WL 4439546, at *2 (E.D. Pa. Sept. 28, 2021); *Smith v. Trans Union LLC*, No. 20-cv-4903, 2021 WL 1061213, at *2 (E.D. Pa. Mar. 19, 2021). However, where a court views the information in its entirety and determines that only one reasonable interpretation of the report exists, a court may determine a report's accuracy as a matter of law. *Gibbs*, 2021 WL 4439546, at *2 (citing *Samoura v. Trans Union LLC*, No. 20-cv-5178, 2021 WL 915723, at *4 (E.D. Pa. Mar. 10, 2021)).

In assessing the information in a consumer's credit report, a court must view the information "through the lens of a person in a position to make an adverse decision based on a credit report, *i.e.*, a creditor." *Bibbs v. Trans Union LLC*, 521 F. Supp. 3d 569, 574 (E.D. Pa. 2021); *Gibbs*, 2021 WL 4439546, at *2; *Smith*, 2021 WL 1061213, at *2. In other words, it does not matter whether the report is inaccurate or misleading in the *consumer's* opinion. *Dickens v. Trans Union Corp.*, 18 F. App'x 315, 318 (6th Cir. 2001). In reviewing the accuracy of a credit report, a court reviews the report in its entirety. *Gibbs*, 2021 WL 4439546, at *2; *see Bibbs*, 521 F. Supp. 3d at 571; *see also Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1252 (11th Cir. 2020) ("[T]he fact that some user somewhere could possibly squint at a report and

5

imagine a reason to think twice about its subject would not render the report objectively misleading.").

At the oral argument on this motion, Ms. Jackson argued that the language of the FCRA does not lend itself to the interpretation that a court must consider the information in a credit report from the perspective of a creditor. Ms. Jackson contended that this reads too much sophistication into the "reasonableness" standard. Instead, Ms. Jackson argued that the FCRA only contemplates "users" of the information and not parties that would be in a position to make an adverse decision based on the information, such as creditors. *See, e.g.*, 15 U.S.C. § 1681e(a) (referring to "users"). The Court thinks that these are probably one and the same; in other words, a "user" of credit information is most likely to be a creditor. Nevertheless, even if Ms. Jackson is right and the Court views the credit information from the perspective of some less sophisticated "user," this does not alter the outcome of the present motion.

For sake of clarity, the Court will briefly address each of Ms. Jackson's arguments.

### I. The "Pay Status" Field of Ms. Jackson's Credit Report Is Not Inaccurate Nor Misleading When Ms. Jackson's Report Is Considered as a Whole

As an initial matter, Ms. Jackson makes much ado about the "Pay Status" field of her credit report. She argues that because the accounts are closed, it is inaccurate or misleading to report the "current status" of the accounts as past due. Ms. Jackson bases this on the definition of the "Pay Status" field provided in the glossary of terms that Trans Union attached to its investigation report. There "Pay Status" is defined as: "The current status of the account; how you are currently paying." Doc. No. 12-3, at 3. And while this argument has some curb appeal, it is a red herring that other courts have already dismissed.

6

As the Court explained in *Bibbs*, the *investigation report* that the parties attached to their briefs is not the same as a *credit report* seen by a potential user or creditor. *Bibbs*, 521 F. Supp. 3d at 574–75. In other words, the investigation reports are not what a reasonable user or creditor would see when reviewing Ms. Jackson's credit report or account information. *Id.* at 574. Therefore, even considering the investigation reports as evidence of the accounts, as the parties ask the Court to do, the definition of "Pay Status" provided in the investigation report is entirely irrelevant. *Id.* at 575; *see also Smith v. Trans Union LLC*, No 20-cv-4233, 2021 WL 4818267, at *5 n.40 (E.D. Pa. Oct. 14, 2021) (same). Because the Court analyzes the account information from the perspective of a reasonable user or creditor who does not have access to the investigation report's glossary, the definition of the "Pay Status" field is beside the point.

Viewing Ms. Jackson's credit report as a whole, as the Court must, *see, e.g.*, *Gibbs*, 2021 WL 4439546, at *2, Ms. Jackson's credit report is not "inaccurate" or "misleading" such that it would have an adverse effect on Ms. Jackson. *Seamans*, 744 F.3d at 865 (internal quotation omitted); *Schweitzer*, 441 F. App'x at 902. From the perspective of a reasonable person, user or creditor, viewing Ms. Jackson's report in its entirety and considering all of the various fields, there is one reasonable reading: Ms. Jackson was delinquent on the four FedLoan accounts between September and November 2016, those accounts were closed on November 9, 2016 and remain closed, and those accounts are listed as having a $0 balance because they are closed. In short, there is nothing inaccurate or misleading about the information on the four FedLoan accounts as Ms. Jackson claims. Numerous other courts have come to the same conclusion on similar facts. *See, e.g.*, *Bibbs*, 521 F. Supp. 3d at 579–80; *Patterson v. Sterling Jewelers Inc.*, No. 21-cv-2138, 2021 WL 4592158, at *3–4 (E.D. Pa. Oct. 6, 2021); *Samoura*, 2021 WL 915723, at *7, *9.

7

There is certainly room for debate that the information on Ms. Jackson's accounts could be *more* accurate.[3] Indeed, Ms. Jackson may be right that it would be *more accurate* for her accounts to state that they were "Closed Due to Transfer" rather than (or in addition to) simply that they were "Closed."[4] But this argument fails for three separate reasons: law, logic, and policy.

First, as a matter of law, the Court's only job is to consider whether the information is *inaccurate* or *misleading*, not ways that the information might be *more accurate*. *Bibbs*, 521 F. Supp. 3d at 579. In other words, the Court's job is to discern differences of kind, not degree. Therefore, the Court declines Ms. Jackson's invitation to engage in the tutoring of credit reporting agencies on the nuances of semantics. *See id.* ("Congress does not direct us to teach credit reporting agencies on the use of 'better' language. . . We are not venturing into speculative word games. . . .").

Second, on a very elemental level, there is a vast difference of degree between information that could be *more accurate* and information that is *inaccurate*. Numerous simple examples come to mind. While a green traffic light might be *more accurate* if, when it turned green, it also stated, "You may proceed now if you have the right of way, but you also need to be cautious of bikers, pedestrians, and all applicable traffic laws," the fact that a green light does not state that information does not make it *inaccurate*. Or, while a cup of coffee from a fast food restaurant might say "Caution, Hot," and it might be *more accurate* if it said "Caution, Hot, but only if you

---

[3] It is true that the FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information." 15 U.S.C. § 1681e(b). However, the Court only reaches the question of whether a credit reporting agency followed such procedures if it first determines that the report contained inaccurate information. *See Cortez*, 617 F.3d at 708. Because the Court determined that Ms. Jackson's report contained no inaccurate information, it does not reach this issue.

[4] Trans Union gave Ms. Jackson the opportunity to make her report *more accurate* by allowing her to add "a note of 100 words or less describing your situation or why you disagree with the results," which Trans Union will "add. . . to the report." Doc. No. 12-3, at 7. In other words, Ms. Jackson had the opportunity to make her report *more accurate* but declined to do so.

8

touch or drink it, and generally it cools down within 10-15 minutes," the fact that this extra information is not included does not make the "Caution, Hot" *inaccurate*.

Third, as a matter of policy, if the Court were to grant Ms. Jackson's request, there would be no limiting principle. If information in a credit report that could be *more accurate* is *inaccurate* for purposes of the FCRA, then every single consumer in the United States would be able to state a claim under the FCRA. For example, Ms. Jackson believes her accounts would be accurate if they had a notation that they were "Closed Due to Transfer." But why stop there? Would it not also be more accurate to state that they were "Closed Due to Transfer with No Remaining Balance"? Or "Closed Due to Transfer with No Remaining Payments Required"? This illustrates the absurd consequences of countenancing Ms. Jackson's claim. If a plaintiff could make a claim under the FCRA that credit information was inaccurate simply by alleging, entirely subjectively, that there is a "better" way to report it, federal courts would become gatekeepers of grammar rather than gatekeepers of justice.

## II. Ms. Jackson's Claim Regarding Computer Algorithms Is Inapposite at This Stage

Ms. Jackson also raised, for the first time in her response, a claim that her credit report is misleading computer algorithms because these algorithms allegedly read the "Pay Status" field in isolation. In a motion for judgment on the pleadings, the Court only considers the allegations raised in the complaint. *Wolfington*, 935 F.3d at 195. Because this allegation is not in her complaint, Ms. Jackson cannot rely on this argument in her opposition brief. *See Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition. . . .") (internal quotation omitted)). Ms. Jackson is free to

9

raise this allegation in an amended pleading, if she so desires. But because this allegation is not in her complaint, the Court will not address this argument.

### III. The Court's Decision Is in Accord With the Majority of Other Courts in This District to Have Considered This Issue

Ms. Jackson argues that her case is distinguishable from the numerous other courts within this district that have come to the same conclusion. Ms. Jackson contends that this case is not like the cases *Bibbs*, 521 F. Supp. 3d 569, *Samoura*, 2021 WL 915723, or *Parke v. Trans Union, LLC*, No. 20-cv-4487, Doc. No. 32 (E.D. Pa. Mar. 5, 2021), because in those cases the accounts reported that they were "Closed Due to Transfer." Because Ms. Jackson's four accounts here only state that they are "Closed," she argues that this case is more akin to *Smith*, 2021 WL 1061213. In that case, the Court found that a plaintiff's account that was paid off in full on the final payment, which simultaneously closed the account, but that was still listed as being past due could be misleading. *Id.* at *3. Ms. Jackson argues that her accounts are more like the account at issue in *Smith* because Trans Union could have included additional information to clarify the accounts' status. The Court disagrees with Ms. Jackson's analysis for a number of reasons.

First, these factual differences do not alter the legal outcome or analysis. As the Court in *Gibbs* recently noted when confronting this very same argument, it is "a distinction without a difference." *Gibbs*, 2021 WL 4439546, at *3. Indeed, the fact that there are small factual differences between this case and any number of similar cases filed here and throughout the country does not change the outcome of the legal analysis that considers Ms. Jackson's credit report *as a whole*. *Gibbs*, 2021 WL 4439546, at *2; *see Bibbs*, 521 F. Supp. 3d at 571.

Second, these minor factual distinctions between cases that Ms. Jackson argues are dispositive do not carry the legal weight that she wishes they did. It is true that certain courts have

10

attempted to distinguish facts in the way that Ms. Jackson suggests or to reconcile seemingly irreconcilable cases by comparing the facts. *See e.g. Bibbs*, 521 F. Supp. 3d at 576–80 (discussing numerous cases); *Samoura*, 2021 WL 915723, at *5–8 (same); *Smith*, 2021 WL 1061213, at *3 (discussing factual distinctions). However, rather than attempting to stitch all of the various opinions on this same issue into a jagged tapestry, this Court will state the plain truth: the Third Circuit Court of Appeals has yet to rule on this issue and courts in this district have, at times, come to irreconcilable conclusions on seemingly identical sets of facts. But, in the past few months, certainly, there has been a growing consensus that a credit report listing a presently-closed account as past due at some point in the past is not "inaccurate" for purposes of the FCRA when the report, considered as a whole, demonstrates to a reasonable person that the account is, in fact, closed.[5]

In order to avoid further confusion and to avoid signaling to other plaintiffs and other courts that getting bogged down in such factual minutiae will affect the outcome, the Court will not rehash each and every case that has addressed this issue. Suffice it to say that regarding Ms. Jackson's reliance on *Smith*, 2021 WL 1061213, *Barrow v. Trans Union, LLC*, No. 20-cv-3628, 2021 WL 1424681 (E.D. Pa. Apr. 13, 2021), and *Muszall v. Trans Union LCC, et al.*, No. 20-cv-4201, Doc. No. 41 (E.D. Pa. July 15, 2021), the argument is entirely unsuccessful. *See, e.g., Patterson*, 2021 WL 4592158, at *3 ("[E]fforts to focus the Court on these cases and ignore the many others that reach a different conclusion . . . are unavailing."); *Ostrander v. Trans Union LLC, et al.*, No. 20-cv-5227, 2021 WL 3271168, at *8 (E.D. Pa. July 30, 2021) ("[T]he plaintiff makes no attempt to

---

[5] *See, e.g., Bibbs v. Trans Union LLC*, No. 20-cv-4514, 521 F. Supp. 3d 569 (E.D. Pa. Feb. 23, 2021); *Smith v. Trans Union LLC*, No. 20-cv-4233, 2021 WL 4818267 (E.D. Pa. Oct. 14, 2021); *Patterson v. Sterling Jewelers Inc.*, No. 21-cv-2138, 2021 WL 4592158, (E.D. Pa. Oct. 6, 2021); *Gibbs v. Trans Union LLC, et al.*, No. 21-cv-667, 2021 WL 4439546 (E.D. Pa. Sep. 28, 2021); *Ostrander v. Trans Union LLC, et al.*, No. 20-cv-5227, 2021 WL 3271168 (E.D. Pa. July 30, 2021); *Samoura v. Trans Union LLC*, No. 20-cv-5178, 2021 WL 915723 (E.D. Pa. Mar. 10, 2021); *Parke v. Trans Union, LLC*, No. 20-4487, Doc. No. 32 (E.D. Pa. Mar. 5, 2021).

explain why the distinction between transferred and non-transferred accounts matters. He does not explain, for example, why those courts' approach of reading the credit report as a whole and the logical conclusions to be drawn therefrom do not apply equally to accounts that are not transferred."); *Gibbs*, 2021 WL 4439546, at *3 (dismissing this identical argument).

Therefore, the Court grants Trans Union's motion for judgment on the pleadings.

## IV. Ms. Jackson May Seek Leave to Amend

In the alternative to her response to Trans Union's motion for judgment on the pleadings, Ms. Jackson now seeks leave to amend her complaint to correct its deficiencies. Ms. Jackson is right that a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). And Ms. Jackson is also right that courts are directed to "generally" grant such requests. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). On the other hand, "to request leave to amend a complaint, the plaintiff must submit a draft amended complaint to the court so that it can determine whether amendment would be futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). Ms. Jackson did not do so here.

Splitting the difference, the Court grants Ms. Jackson leave to *seek leave* to amend her complaint. Therefore, in a technical sense the Court denies Ms. Jackson's present motion to amend her complaint but will grant her the opportunity to file a new motion for leave to amend with the amended pleading appropriately attached.

CONCLUSION

For the foregoing reasons, the Court grants Trans Union's Motion for Judgment on the Pleadings and denies Ms. Jackson's Motion for Leave to Amend. An appropriate order follows.

BY THE COURT:

_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE